## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **BENOIT BROOKENS**, |
| Plaintiff, |
| v. |
| **LARHONDA GAMBLE**, *et al.*, |
| Defendants. |

Case No. 20-cv-1740 (CRC)

## <u>MEMORANDUM OPINION</u>

This case arises from a dispute about union membership.  Plaintiff Benoit Brookens considers himself a retired member of the American Federation of Government Employees ("AFGE") Local 12.  Local 12 says he is not eligible for membership.  Consistent with that position, Local 12 stopped accepting Mr. Brookens's dues, enlisted help from the U.S. Department of Labor ("DOL") to prevent him from attending membership meetings, and denied him the right to vote on a recent collective bargaining agreement ("CBA").  Brookens, proceeding *pro se*, sued Local 12, its president LaRhonda Gamble, Secretary of Labor Eugene Scalia, and DOL security officer Timothy Deane.  In his Complaint and accompanying Motion for Preliminary Injunction, he asks the Court to stay the effect of the new CBA on which he was not allowed to vote.  The defendants move to dismiss the Complaint.

The Court concludes that Brookens's claims must be dismissed.  Brookens principally claims the defendants committed unfair labor practices under the Civil Service Reform Act ("CSRA") and violated the Labor Management Reporting and Disclosure Act ("LMRDA").  But the Court cannot hear unfair labor practice claims involving the federal government's workforce, nor can it rule on LMRDA claims regarding the conduct of unions that exclusively represent government workers, such as Local 12.  Brookens's claim that the defendants violated his

constitutional rights similarly fails because he has not exhausted his administrative remedies—a failure that both deprives the Court of subject matter jurisdiction and prevents Brookens from stating a claim upon which relief can be granted. The Court will therefore grant the pending motions to dismiss and decline to issue a preliminary injunction.

I.   **Background**

A.   Facts

The following facts are alleged in the Complaint or drawn from the declaration of AFGE Local 12 President LaRhonda Gamble, the accuracy of which Brookens does not dispute in relevant part.

Local 12's membership consists entirely of current DOL employees, former employees who retired from DOL, and former employees who were terminated by DOL without cause. Gamble Decl. ¶ 3. Local 12's bargaining team is authorized to engage in collective bargaining with DOL. Compl. ¶ 32. According to Brookens, members of the bargaining team must be elected by Local 12's membership. Id. ¶ 31.

Brookens became a member of Local 12 around January 1990. Id. ¶ 5. In his telling, he has been a "retired" member of Local 12 since approximately August 2007. Id.[1] Since he stopped working for DOL, Brookens has continued to send checks to Local 12 for his union dues, although Local 12 has rejected at least some of those checks. Id. ¶ 18. Local 12 permitted Brookens to participate in union activities until 2018. Gamble Decl. ¶ 10.

---

[1] Brookens is a former DOL economist who also holds a law degree. DOL terminated him in 2008. Brookens v. Acosta, 297 F. Supp. 3d 40, 43 (D.D.C.), summarily aff'd, 2018 WL 5118489 (D.C. Cir. 2018), cert. denied, 140 S. Ct. 572 (2019). The Court takes judicial notice of this background information but does not rely on it to decide the present motions to dismiss.

In 2017, the national AFGE placed Local 12 into trusteeship although, according to Brookens, there was "no valid legal reason" to do so.  Compl. ¶ 16.  Brookens took "legal action" in response.  Id. ¶ 17.  Brookens alleges that because of his legal action, Local 12 elections were held in 2018, and the trusteeship was vacated shortly thereafter.  Id.

Local 12 subsequently concluded that Brookens was no longer entitled to membership in the union.  Gamble Decl. ¶ 12.  Around the same time, Local 12 began excluding Brookens from membership activities and enlisting the help of DOL security officers to keep him out of union meetings held in the DOL building.  According to the Complaint and attached exhibits, Brookens has been ejected from union meetings or prevented from entering the DOL building on at least five occasions.  See Compl. Ex. 3 (administrative charge alleging that Ms. Gamble, then Executive Vice President of Local 12, called DOL security officers to remove Brookens from meeting in November 2018); Compl. ¶ 20-21 (alleging similar incident in February 2019); Compl. Ex. 4 (Mr. Deane allegedly stopped Brookens from entering DOL building in May 2019 and told him he could be banned from the building for up to one year); Compl. ¶ 10 (alleged ejection from Local 12 meeting in October 2019); id. ¶¶ 18-19 (alleged collusion between Local 12 and national AFGE to exclude Brookens from AFGE National Executive Council meeting in February 2020).  As a result, Brookens cannot participate in Local 12 meetings, nor can he attend events at the DOL building or access the building's facilities, including the labor law library, the post office, and exhibit spaces.  Id. ¶¶ 35-37.

In March and June 2019, Brookens submitted administrative charges to the Federal Labor Relations Authority ("FLRA"), complaining of his exclusion from Local 12 meetings by Local 12 and DOL officials.  Compl. Exs. 3, 4.  The FLRA dismissed those charges, and Brookens

appealed those dismissals to the FLRA's Office of General Counsel.  Compl. ¶ 26.  At the time

of the Complaint, the Office of General Counsel had not ruled on the appeals.  Id. ¶ 27.

In or around May 2020, then-President of Local 12 Jeffrey Wheeler resigned under what

Brookens describes, without elaboration, as "highly irregular and questionable circumstances."

Id. ¶ 7.  Gamble then assumed the presidency of Local 12.  Id.  Also in May 2020, Local 12

presented its membership with a new CBA, which was set to take effect on July 1, 2020.  Id. ¶¶

13, 33.  The CBA was subject to ratification by a vote of Local 12 members.  Id. ¶ 13.  Brookens,

however, was denied the right to vote on the CBA.  Id. ¶ 15.

B.  Proceedings in this Case

Brookens filed this action in June 2020, days before the new CBA was to take effect.

The five-count Complaint cites two federal statutes—the CSRA, 5 U.S.C. § 7116 et seq., and the

LMRDA, 29 U.S.C. § 411 et seq.—as bases for jurisdiction, but it does not clearly state which

claims arise under which statute.  Compl. ¶ 3.  Brookens also alleges that certain actions by

Deane and Gamble violated the First and Fourteenth Amendments.  Id. ¶ 29.  The Complaint

requests "injunctive relief, staying the effect of . . . the now allegedly member ratified CBA."  Id.

¶ 38 (capitalization altered).  Brookens immediately moved for a preliminary injunction to

prevent the CBA from taking effect "on the grounds that [the] Ratification vote for the contract is

obviously highly irregular and biased."  Mot. for Prelim. Injunction.

The case was initially assigned to Judge Tanya S. Chutkan but was reassigned to this

Court in August 2020 because a separate case brought by Brookens was pending before the

undersigned.  After the case was reassigned, the Court entered an order noting that no proof of

service had been filed and advising the parties that the Court would not take up the preliminary

injunction motion until the Complaint was properly served.  Minute Order (Aug. 12, 2020).

Local 12 and Gamble (together "Union Defendants") moved to dismiss the Complaint for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and for failure to effect service of process.  Union Defs.' Mem. 1.  Deane and Secretary Scalia (together "Federal Defendants") then filed a separate motion to dismiss, arguing that the Complaint fails to state a claim because it admits that Brookens did not exhaust his administrative remedies before filing suit.  Federal Defs.' Mem. 5-6.

Brookens responded to both motions with a combined filing styled "Motion to Strike Defendant Union's Motion to Dismiss and Response to Federal Defendant's Motion" ("Opp."). He argues, without citing authority, that the Union Defendants waived their arguments for dismissal by failing to raise them in their Notice of Related Cases.  Opp. 2.  He also argues on the merits that the Court has jurisdiction over the Complaint, that the Complaint states a cognizable claim, and that the exhaustion arguments raised by both groups of defendants should be rejected.  Opp. 3-8.[2]

---

[2] While the motions to dismiss were pending, Brookens also filed affidavits of service, demonstrating that he sent copies of the Complaint and Summons to each defendant by certified mail.  Reasonable minds could differ on whether it was proper for Brookens to serve the defendants by personally mailing the Complaint and Summons.  Generally, the person who serves a federal complaint must not be a party to the case.  Fed. R. Civ. P. 4(c)(2).  Another judge in this District recently held that under this federal rule, a plaintiff in federal court may not serve a defendant by personally mailing a complaint and summons, "even if the relevant state law allows parties to effect service by personally sending the summons and complaint by certified mail," as District of Columbia law likely does.  Johnson-Richardson v. Univ. of Phoenix, 334 F.R.D. 349, 354 (D.D.C. 2020).  Because the Court dismisses this case on other grounds, it will not reach the issue of whether adequate service was made, nor does it express an opinion on whether plaintiffs in this District generally may effect service by personally mailing the necessary papers.

Both groups of defendants subsequently filed replies in support of their motions to dismiss, and Brookens filed a reply in support of his request to strike the Union Defendants' motion.  The motions to dismiss and the motion to strike are now fully briefed.

## II.  Legal Standards

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court must dismiss any claim over which it lacks subject matter jurisdiction.  Auster v. Ghana Airways Ltd., 514 F.3d 44, 48 (D.C. Cir. 2008).  The plaintiff bears the burden of establishing jurisdiction.  Knapp Med. Ctr. v. Hargan, 875 F.3d 1125, 1128 (D.C. Cir. 2017).  On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," but need not "assume the truth of legal conclusions" in the complaint.  Williams v. Lew, 819 F.3d 466, 472 (D.C. Cir. 2016) (internal quotation marks omitted).  The Court also "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

On its face, Rule 12(b) directs a defendant to file a motion to dismiss for lack of subject matter jurisdiction within any applicable time limit for a responsive pleading.  However, "[i]t is axiomatic that subject matter jurisdiction may not be waived."  Athens Cmty. Hosp., Inc. v. Schweiker, 686 F.2d 989, 992 (D.C. Cir. 1982); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[3]  A court should therefore consider the arguments made in a Rule 12(b)(1) motion,

---

[3] In his reply, Brookens cites Rule 12(h) as support for his position that the Union Defendants waived their arguments for dismissal by purportedly raising them too late.  Pl.'s

even if the motion is technically untimely.  See Casanova v. Marathon Corp., 256 F.R.D. 11, 12

(D.D.C. 2009).  The Court will therefore bypass Brookens's suggestion that the Union

Defendants' motion was untimely and proceed to analyze the jurisdictional arguments raised by

the Union Defendants.

B.  Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) requires the Court, on a properly filed motion,

to dismiss a complaint that fails "to state a claim upon which relief can be granted."  In analyzing

a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  "The Court takes all of the factual allegations in the complaint as

true and construes those facts 'liberally in the plaintiff's favor with the benefit of all reasonable

inferences derived from the facts alleged.'"  Johnson v. United States, No. 17-cv-2411 (CRC),

2019 WL 2424039, at *3 (D.D.C. June 10, 2019) (quoting Stewart v. Nat'l Educ. Ass'n, 471

F.3d 169, 173 (D.C. Cir. 2006)).  Dismissal for failure to state a claim is appropriate where the

plaintiff is required to exhaust pre-suit administrative remedies and "the plaintiff's failure to

exhaust is apparent on the face of [the] complaint."  Savage v. Azar, 317 F. Supp. 3d 438, 440

(D.D.C. 2018) (Cooper, J.); see also Hidalgo v. FBI, 344 F.3d 1256, 1260 (D.C. Cir. 2003)

(instructing district court to dismiss Freedom of Information Act complaint under Rule 12(b)(6)

for failure to exhaust administrative remedies).

---

Reply 2.  But he fails to note that Rule 12(h) specifically excludes lack of subject matter
jurisdiction from the list of defenses that are waived if not timely raised.  See Fed. R. Civ. P.
12(h)(1) (addressing waiver of "any defense listed in Rule 12(b)(2)–(5)," but not Rule 12(b)(1));
id. 12(h)(3).

C.  Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  To obtain a preliminary injunction, the moving party must show: (1) that he is likely to succeed on the merits of his claim; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that a preliminary injunction is in the public interest.  Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008).  An absence of irreparable injury is fatal to a preliminary injunction motion.  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  The D.C. Circuit has suggested, without holding, that the failure to establish a likelihood of success on the merits also categorically forecloses preliminary relief.  Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011).  A party cannot establish a likelihood of success on the merits if it fails to show a likelihood that the Court has subject matter jurisdiction over the case.  See Make the Rd. N.Y. v. Wolf, 962 F.3d 612, 623 (D.C. Cir. 2020).

III.  **Analysis**

A.  Motions to Dismiss

Brookens's claims appear to fall into two categories: (1) statutory claims under the LMRDA or the CSRA, and (2) constitutional challenges to the same conduct attacked by the statutory claims.  The Court will separately analyze each type of claim.

1.  *The Court lacks subject matter jurisdiction over Brookens's statutory claims.*

The Complaint does not make clear which of Brookens's statutory claims arise under the LMRDA and which arise under the CSRA.  Rather than attempt to sort the claims one-by-one into LMRDA and CSRA categories, the Court will follow a simpler path.  First, the Court asks

whether the Complaint, generously construed, raises *any* LMRDA claims that fall within the Court's jurisdiction. Second, the Court asks the same question as to CSRA claims. Because both questions must be answered in the negative, the Court finds that it lacks subject matter jurisdiction over all statutory claims in the Complaint.

> a.  <u>The Court lacks jurisdiction over a LMRDA challenge to the conduct of Local 12 and federal government officials.</u>

The Union Defendants argue that the Court lacks subject matter jurisdiction over Brookens's LMRDA claims because this case does not involve the conduct of a labor organization covered by the LMRDA. Union Defs.' Mem. 10-11. The Court agrees.

"Congress enacted the LMRDA to protect workers from corrupt leadership in unions representing private sector employees[.]" <u>Wildberger v. AFGE, AFL-CIO</u>, 86 F.3d 1188, 1193 (D.C. Cir. 1996). The LMRDA provides certain rights to "[e]very member of a labor organization." 29 U.S.C. § 411(a). The statute authorizes actions in federal district court to vindicate those rights. <u>Id.</u> § 412.

In an LMRDA case, the Court's "jurisdiction turns on whether the LMRDA applies to" the specific union or affiliate whose actions are challenged. <u>Wildberger</u>, 86 F.3d at 1192. The LMRDA applies only if that entity falls within the statute's definition of the term "labor organization":

> "Labor organization" means a labor organization *engaged in an industry affecting commerce* and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged *in which employees participate* and which exists for the purpose, in whole or in part, of *dealing with employers* concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

29 U.S.C. § 402(i) (emphases added).  "Employer," in turn, is defined to exclude "the United

States or any corporation wholly owned by the Government of the United States or any State or

political subdivision thereof."  Id. § 402(e); see also Wildberger, 86 F.3d at 1192 ("The LMRDA

definition of 'employer,' specifically excludes federal, state and local governments.").  The

definition of "employee" is limited to individuals "employed by an employer"—i.e., non-

governmental employees.  Id. § 402(f).  And an organization is considered to be "engaged in an

industry affecting commerce" only if it fits certain criteria based on its relationship with

"employees."  Id. § 402(j).[4]  Thus, a union or similar entity that represents only government

workers is not covered by the LMRDA.  The LMRDA does, however, apply to a "mixed union"

---

[4] Section 402(j) provides in full,

A labor organization shall be deemed to be engaged in an industry affecting
commerce if it--
    (1) is the certified representative of employees under the provisions of the
    National Labor Relations Act, as amended, or the Railway Labor Act, as
    amended; or
    (2) although not certified, is a national or international labor organization or a
    local labor organization recognized or acting as the representative of
    employees of an employer or employers engaged in an industry affecting
    commerce; or
    (3) has chartered a local labor organization or subsidiary body which is
    representing or actively seeking to represent employees of employers within
    the meaning of paragraph (1) or (2); or
    (4) has been chartered by a labor organization representing or actively seeking
    to represent employees within the meaning of paragraph (1) or (2) as the local
    or subordinate body through which such employees may enjoy membership or
    become affiliated with such labor organization; or
    (5) is a conference, general committee, joint or system board, or joint council,
    subordinate to a national or international labor organization, which includes a
    labor organization engaged in an industry affecting commerce within the
    meaning of any of the preceding paragraphs of this subsection, other than a
    State or local central body.

whose members include both governmental and private-sector workers.  Wildberger, 86 F.3d at 1192.

In another case brought by Brookens, this Court recently held that a local, council, or similar entity that represents only government workers is not subject to the LMRDA, even if its parent union is mixed.  Brookens v. Drudi, No. 20-cv-695 (CRC), 2020 WL 5891450, at *4 (D.D.C. Oct. 5, 2020).  As the Court explained, this rule accords with the statutory text.

> The LMRDA's definition of "labor organization" specifies that *some* entities may be covered by virtue of their status as "subordinate" affiliates of national or international labor organizations.  29 U.S.C. § 402(i).  But it also makes clear that no entity, subordinate or otherwise, can qualify as a labor organization unless it is "engaged in an industry affecting commerce."  Id. (defining "labor organization" as "a labor organization engaged in an industry affecting commerce," and clarifying that this definition includes certain subordinate entities that are "so engaged").  And the business of government is not an "industry affecting commerce" under the LMRDA.  See id. § 402(j) (deeming an organization to be "engaged in an industry affecting commerce" if it performs certain functions with respect to "employees" or, in limited circumstances, if it "includes" an entity that performs such functions); id. § 402(e) (defining "employer" to exclude the federal, state, and local governments); id. § 402(f) (defining "employee" as "an individual employed by an employer").

Id.  Under this statutory scheme, a government-only local or council is not "engaged in an industry affecting commerce" and therefore is not a covered "labor organization."  Id.; see also Reed v. Sturdivant, 176 F.3d 1051, 1052 (8th Cir. 1999) (purely public-sector local of mixed union not a "labor organization" under the LMRDA); Hudson v. AFGE, No. 19-cv-2738 (JEB), 2019 WL 6683778, at *2-*3 (D.D.C. Dec. 6, 2019) (similar); Adams v. AFSCME Int'l, 167 F. Supp. 3d 730, 740 (D. Md. 2016) (similar).

The Court's reasoning in Drudi applies equally in this case.  The union entity at issue here is Local 12.  See Compl. (naming Local 12 and its president as defendants); id. ¶ 1 (stating that this action "challenges the fairness of the ratification vote for the Local 12 Collective Bargaining Agreement").  While Local 12 is undisputedly affiliated with a mixed parent union, it

11

is also undisputed that Local 12 itself represents only government workers.  Gamble Decl. ¶¶ 2-3.  Local 12 therefore is not a covered "labor organization" under the LMRDA.  Nor, of course, do DOL and its officials qualify as "labor organizations" amenable to LMRDA claims.

To support his position that the Court has jurisdiction under the LMRDA, Brookens quotes from the D.C. Circuit's Wildberger decision.  Opp. 3-4.  There, the D.C. Circuit held that because the national AFGE is a mixed union, it is covered by the LMRDA.  Wildberger, 86 F.3d at 1192.  As this Court has previously explained, see Drudi, 2020 WL 5891450, at *4, Wildberger's holding does not imply that government-only locals of mixed parent unions are subject to the LMRDA.  If anything, Wildberger supports the opposite conclusion because the opinion notes, with no hint of disapproval, that DOL regulations classify "locals composed purely of government employees" as outside the LMRDA's coverage.  86 F.3d at 1192.

Brookens also cites a fact sheet posted on the DOL website, which advises federal employees: "If the union that you allege violated your rights (whether a local union or a parent body) represents any private sector employees, your complaint is covered by the LMRDA[.]"  Pl.'s Reply 3.  Whatever authoritative value this document has, it is fully consistent with this Court's interpretation of the LMRDA.  As explained by the fact sheet, *if* Brookens's claim were that a mixed union such as the national AFGE violated certain rights, *then* the LMRDA might apply.  But this case involves the conduct of Local 12, not its mixed parent union.

The Court concludes that LMRDA does not apply to Local 12.  Brookens's LMRDA claims therefore must be dismissed for lack of subject matter jurisdiction.

   b. <u>The Court lacks jurisdiction over Brookens's claims under the CSRA.</u>

The Complaint indicates that at least some of Brookens's claims challenge alleged unfair labor practices under Title VII of the CSRA ("Title VII").  <u>See</u> Compl. ¶ 3 (alleging that the

Court has jurisdiction based on the "Duty of Fair Representation") (citing 5 U.S.C. § 7116 et seq.); id. ¶ 34 (alleging that defendants Gamble and Deane violated the duty of fair representation under the CSRA by preventing Brookens from attending and participating in Local 12 meetings).  Such claims fall outside this Court's jurisdiction.

"Title VII of the [CSRA], 5 U.S.C. §§ 7101-7134, governs labor relations between federal agencies and their employees."  AFGE, AFL-CIO v. Loy, 367 F.3d 932, 935 (D.C. Cir. 2004).  Under Title VII, a union that serves as the exclusive collective-bargaining agent for a unit of employees "is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership."  5 U.S.C. § 7114(a)(1).  In other words, such a union has a duty of fair representation.  Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263, 489 U.S. 527, 531-32 (1989).  A breach of this duty of fair representation constitutes an unfair labor practice.  Id. at 532.  When unions representing federal employees are accused of unfair labor practices under Title VII, those complaints are adjudicated by the FLRA.  Id. (citing 5 U.S.C. § 7118).  While the statute provides for review of final FLRA orders in U.S. Courts of Appeals, id. (citing 5 U.S.C. § 7123(a)),[5] it does not authorize suits in federal district court alleging breaches of the duty of fair representation.

_____

[5] An FLRA Regional Director's decision to dismiss a charge without issuing an administrative complaint, or the FLRA General Counsel's decision to affirm such a dismissal, does not constitute a final FLRA order subject to review in the Courts of Appeals.  Turgeon v. FLRA, 677 F.2d 937, 940 (D.C. Cir. 1982) (concluding that "Congress clearly intended the General Counsel of the Federal Labor Relations Authority to have unreviewable discretion to decline to issue unfair labor complaints").  Therefore, if the FLRA General Counsel affirms the dismissal of Brokens's unfair labor practice charges, Brookens will have no further opportunity to press the CSRA claims covered by those charges, either before the FLRA or before any court.  However, if the General Counsel decides to issue a complaint, the FLRA will then afford Brookens an administrative hearing.  See 5 U.S.C. § 7118(a)(6).  If the FLRA rules against Brookens after such a hearing, that final order will subject to review in an appropriate Court of Appeals.  See id. § 7123(a).

Karahalios, 489 U.S. at 536-37.  District courts therefore lack jurisdiction over such suits.  See Steadman v. Governor, U.S. Soldiers' & Airmen's Home, 918 F.2d 963, 966-67 (D.C. Cir. 1990); Corrigan v. Nat'l Treasury Emps. Union, 690 F. Supp. 2d 1, 4 (D.D.C. 2010).

Despite invoking the CSRA as a basis for jurisdiction in his Complaint, Compl. ¶ 3, Brookens does not press this argument in his opposition brief, pivoting instead to the separate contention that the Court has jurisdiction to entertain his LMRDA claims.  See Opp. 3-4, 6.  He thus appears to abandon his position that the Court should exercise jurisdiction over his CSRA unfair labor practice claims.

Even if Brookens did not concede the point, the Court would find that it lacks jurisdiction over the Complaint insofar as it pleads claims directly under the CSRA.  Some of Brookens's claims are explicitly framed as challenges to alleged breaches of Local 12's duty of fair representation.  See Compl. ¶¶ 3, 34; id. Counts I, IV ("Breach of Duty of Fair Representation").  Other claims in the Complaint fail to cite any specific statutory provision but are best construed as challenges to alleged unfair labor practices under the CSRA.  See, e.g., id. Count III ("Differential Treatment of Members"); id. ¶ 29 (alleging "collusion between management and the union to the detriment of Union members").  These are precisely the types of CSRA claims that fall within the FLRA's exclusive purview.  See Karahalios, 489 U.S. at 536-37; Steadman, 918 F.2d at 966.

Brookens's CSRA claims therefore fall outside this Court's jurisdiction.  This conclusion, together with the Court's determination that it lacks jurisdiction over Brookens's LMRDA claims, means the Court must dismiss all of Brookens's statutory claims for lack of subject matter jurisdiction.

    2.   *Any constitutional claim in the Complaint must be dismissed for failure to exhaust administrative remedies.*

Finally, Brookens alleges that Gamble and Deane violated his constitutional rights. Specifically, Brookens alleges that Deane ejected him from a Local 12 meeting at Gamble's request in 2019, and that Deane has since prevented Brookens from entering the DOL building to attend union meetings, to access facilities including the labor law library, or for any other purpose.  Compl. ¶¶ 10, 21, 34-37.  Brookens claims Deane and Gamble thus violated the First and Fourteenth Amendments, as well as "applicable Labor Management Relations Statutes," by collaborating to "deprive [him] of his union right."  Id. ¶ 29.  Assuming that Brookens intends to plead freestanding constitutional claims regarding this alleged conduct, the Court must dismiss those claims because the CSRA requires Brookens to exhaust his administrative remedies before turning to this Court with these constitutional challenges.

The CSRA provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  United States v. Fausto, 484 U.S. 439, 445 (1988).  Under this system, the FLRA has the initial responsibility for adjudicating claims that a federal agency or a labor organization representing federal employees committed an unfair labor practice banned by Title VII of the CSRA.  See 5 U.S.C. § 7118; Arakawa v. Reagan, 666 F. Supp. 254, 258 n.7 (D.D.C. 1987).

To preserve the "complicated and subtle scheme" that Congress adopted, longstanding case law requires that plaintiffs exhaust the CSRA's administrative procedures before seeking judicial review of certain "CSRA-related" claims under the Constitution.  Steadman, 918 F.2d at 967; see also id. at 968 (noting that *after* the plaintiff exhausts CSRA administrative remedies without winning relief, a federal district court may hear a constitutional claim that "survive[d]

[the] unsuccessful journey through the administrative process"). This exhaustion requirement applies "[w]hen the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation.'"  Id. at 967 (quoting Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C. Cir. 1984)).  "Only in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures can a party come directly to district court."  Id.

D.C. Circuit precedent indicates that if a plaintiff improperly files a constitutional claim without exhausting administrative procedures under the CSRA, the district court should dismiss the claim for lack of subject matter jurisdiction.  See Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.") (citing Steadman, 918 F.2d at 967-68); see also deLeon v. Wilkie, No. 19-cv-1250 (JEB), 2020 WL 210089, at *4 (D.D.C. Jan. 14, 2020).[6]  Alternatively, courts may appropriately dismiss a complaint for failure to state a claim where the plaintiff was required to exhaust the CSRA administrative process but failed to do so.  See Fraternal Ord. of

---

[6] One could perhaps make a colorable argument that administrative exhaustion under the CSRA would be better treated as a non-jurisdictional requirement.  Cf. Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850 (2019) (holding that the requirement to file an administrative charge before bringing suit under Title VII of the Civil Rights Act of 1964 is not jurisdictional); id. at 1848 ("'Jurisdiction' . . . is a word of many, too many, meanings.  In recent years, the [Supreme] Court has undertaken to ward off profligate use of the term." (cleaned up)).  Indeed, the D.C. Circuit has been less than fully consistent in applying a jurisdictional framework to CSRA exhaustion.  See Nat'l Treasury Emps. Union v. King ("NTEU"), 961 F.2d 240, 243 (D.C. Cir. 1992) ("The doctrine of exhaustion of administrative remedies concerns the timing rather than the jurisdictional authority of federal court decisionmaking.").  Nevertheless, the D.C. Circuit's post-NTEU case law does treat exhaustion of CSRA administrative remedies as "a jurisdictional prerequisite to suit."  Weaver, 87 F.3d at 1433.  That rule is binding on this Court "unless and until overturned by the [D.C. Circuit] en banc or by Higher Authority."  Critical Mass Energy Project v. Nuclear Regul. Comm'n, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc).

Police, D.C. Lodge 1, Def. Protective Servs. Labor Comm., Inc.  v. Gates, 562 F. Supp. 2d 7, 11, 14 (D.D.C. 2008).

 Here, the Complaint makes clear that any constitutional claims Brookens raises arise from the same facts as his statutory claims.  See Compl. ¶ 29 (claiming that alleged conduct constitutes a breach of duty of fair representation and violates both the Constitution and "applicable Labor Management Relations Statutes").  It is also clear that the remedies available in FLRA proceedings are sufficient to give Brookens adequate relief for the constitutional violations he claims, assuming those claims have merit.  The FLRA has the authority to issue an order requiring a federal agency or labor organization "to cease and desist from any . . . unfair labor practice in which the agency or labor organization is engaged."  5 U.S.C. § 7118(a)(7)(A); accord Indep. Union of Pension Emps. for Democracy & Just. v. FLRA, 961 F.3d 490, 499 (D.C. Cir. 2020).  The FLRA could use that power to order DOL and Local 12 to stop blocking Brookens from entering the DOL building and attending union meetings, if it were to agree with Brookens that this action constitutes an unfair labor practice.  Such an order would end the alleged constitutional violation.  Indeed, if the Court were to adjudicate Brookens's constitutional claims, the judicial remedy (if any) for the claimed constitutional violation would be limited to a declaratory judgment and a forward-looking injunction along the same lines as the relief available at the FLRA.

 Brookens is therefore required to exhaust his administrative remedies at the FLRA before bringing his constitutional claims to district court.  He has not satisfied this requirement.  According to the Complaint, Brookens has appealed the FLRA Regional Director's initial dismissal of his administrative charges concerning the allegedly unconstitutional conduct, but the FLRA General Counsel has not yet ruled on those appeals.  Compl. ¶¶ 26-27.  An administrative

appeal from the Regional Director's initial dismissal is part of the administrative process that must be exhausted before this Court may hear a CSRA-related constitutional claim.  See Fraternal Ord. of Police, 562 F. Supp. 2d at 13-14 (plaintiff failed to exhaust CSRA remedies where it did not administratively appeal the initial dismissal of its unfair labor practice charge). While the Court appreciates Brookens's frustration at the length of the wait for a decision on his appeals, see Compl. ¶ 27, he cites no authority for the notion that the Court may deem the administrative process exhausted simply because the appeal has been pending for some time.

Seeking to avoid dismissal for failure to exhaust administrative remedies, Brookens quotes the Supreme Court's remark that parents seeking a free appropriate public education for children with disabilities need not exhaust their administrative remedies "where exhaustion would be futile or inadequate."  Opp. 4 (quoting Honig v. Doe, 484 U.S. 305, 326-27 (1988)). But aside from citing the length of time his administrative appeal has been pending, Brookens offers no reason to find that exhaustion would be futile or inadequate in this case.  Nor is it clear that the Court could excuse Brookens's failure to exhaust his CSRA remedies even if exhaustion would be futile.  As noted, the D.C. Circuit considers exhaustion under the CSRA a jurisdictional requirement, which may not be the case for exhaustion under the Individuals with Disabilities Education Act ("IDEA").  Compare Weaver, 87 F.3d at 1433 ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.") (citing Steadman, 918 F.2d at 966-68) with A.U. v. District of Columbia, No. 1:19-cv-3512 (TJK/GMH), 2020 WL 4754619, at *3 n.5 (D.D.C. July 13, 2020) ("There is some disagreement among the federal judges in this District as to whether exhaustion of administrative remedies under the IDEA is a jurisdictional prerequisite to a federal court hearing the claim[.]").  Where exhaustion is a jurisdictional requirement, courts generally will make no exceptions, even where the plaintiff can demonstrate

futility.  Kursar v. TSA, 581 F. Supp. 2d 7, 18 (D.D.C. 2008).  In the absence of precedent

recognizing a futility exception to the exhaustion requirement under the CSRA, the Court will

not import one from the IDEA case law.

Brookens also responds to defendants' exhaustion arguments by citing the LMRDA,

which he asserts confers jurisdiction on the Court without further administrative proceedings.

Opp. 4, 6.  As already discussed, that argument fails because this case does not involve a "labor

organization" covered by the LMRDA.

Brookens's admitted failure to exhaust his administrative remedies therefore precludes

this Court from granting relief on his constitutional claims.[7]  The Court will dismiss these claims

both for lack of subject matter jurisdiction and, alternatively, for failure to state a claim.  See

_____

[7] The validity of Brookens's constitutional claims is dubious in any event.  As to the First
Amendment, Brookens's theory seems to be that by denying him access to the DOL building,
Deane deprived him of the opportunity to attend and participate in union activities, thus
burdening his expressive and associational rights.  But Brookens likely has no First Amendment
right to associate with and attend the meetings of a union that, rightly or wrongly, regards him as
a nonmember.  See Del. Coal. for Open Gov't, Inc. v. Strine, 733 F.3d 510, 518 n.2 (3d Cir.
2013) (noting that "[m]eetings by private organizations . . . are usually closed to the public" and
distinguishing such meetings from governmental proceedings to which the public has a First
Amendment right of access); Presnick v. Town of Orange, 152 F. Supp. 2d 215, 223 (D. Conn.
2001) ("[A] person does not have a right to attend a private meeting of a municipal board simply
because the meeting occurs within a public building[.]").

Brookens's reference to the Fourteenth Amendment is presumably intended to suggest
that he was denied equal protection or deprived of a constitutionally protected interest without
due process.  However, these provisions of the Fourteenth Amendment do not apply to the
federal government or to non-governmental actors such as Gamble.  San Francisco Arts &
Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987).  While the Fifth
Amendment does provide parallel protections against the federal government, id., none of
Brookens's factual allegations support an inference that DOL discriminated against him or
deprived him of a constitutionally protected interest in life, liberty, or property in violation of the
Fifth Amendment.

deLeon, 2020 WL 210089, at *4 (dismissal under Rule 12(b)(1)); Fraternal Ord. of Police, 562 F.

Supp. 2d at 11-13 (dismissal under Rule 12(b)(6)).

      B.  Motion for Preliminary Injunction

      As explained above, the Complaint must be dismissed.  For substantially the same

reasons, Brookens's motion for a preliminary injunction must be denied.

      To begin, Brookens cannot show a likelihood of success on the merits because the Court

lacks jurisdiction.  Part of the burden on the party seeking a preliminary injunction is to show

that the Court likely has jurisdiction to grant relief on the underlying claims.  See Make the Rd.

N.Y., 962 F.3d at 623.  Brookens has failed to do so.

      Moreover, Brookens has not carried his burden to show that he would suffer irreparable

harm in the absence of preliminary relief.  Brookens's preliminary injunction motion offers only

three sentences of reasoning, none of which speaks to the irreparable-harm prong.  Even if the

Court were to take the allegations in the Complaint at face value, it would see no basis to

conclude that Brookens is irreparably harmed by the existence of a CBA he does not support.

Indeed, Brookens fails to explain what concrete impact, if any, the new CBA has on the rights of

former DOL employees.

      The Court will therefore deny Brookens's preliminary injunction motion.

* * *

**IV.  Conclusion**

      For the foregoing reasons, the Court will grant the Union Defendants' Motion to Dismiss;

grant the Federal Defendants' Motion to Dismiss; deny Plaintiff's Motion for Preliminary

Injunction; and deny Plaintiff's Motion to Strike the Union Defendants' Motion to Dismiss.  A

separate Order shall accompany this Memorandum Opinion.



Date:  <u>October 19, 2020</u>

_____
CHRISTOPHER R. COOPER
United States District Judge